EQUITY CO-OPERATIVE PACKING COMPANY, a Corporation, and P. M. Casey, Respondents, v. THOMAS HALL, Secretary of State of the State of North Dakota, Appellant.

(173 N. W. 796.)

**Corporations — amendment of articles of incorporation — compelling secretary of state to file articles as amended.**

The plaintiff attempted to incorporate as a co-operative corporation under chapter 92 of the Session Laws of North Dakota for the year 1915. The

incorporators informed their attorneys that they desired to be incorporated under said law, and instructed their attorneys to prepare articles of incorporation pursuant thereto. There were only seven signers of the articles of incorporation; they were unaware that it was required by said law to have twenty-five incorporators instead of seven. There was inadvertently omitted from the original articles of incorporation statements showing the co-operative character of the plaintiff. The incorporators of plaintiff believed it was properly incorporated pursuant to chapter 92. The legislature of 1917 passed an act known as chapter 97, whereby any co-operative corporation which had attempted to incorporate under any prior statute or which was theretofore organized and doing business under prior statutes could by taking the proper proceedings required by chapter 97 receive the benefit thereof and be bound thereby. The plaintiff did this and tendered to the secretary of state, Thomas Hall, certain amended articles of incorporation and a filing fee of $5 and recording fee of $6, which are the proper fees if plaintiff is a co-operative corporation. The secretary of state refused to receive and file such amended articles on the theory that the plaintiff was an ordinary corporation, and having increased its capital stock from $1,000,000 to $3,000,000, the defendant contends the filing fee would be $1,000 and recording fee $6. The trial court, W. L. Nuessle, issued a writ of mandamus directed to Thomas Hall, secretary of state, requiring him to file in his office the amended articles of incorporation. *Held* that the action of the trial court in overruling defendant's demurrer to application for mandamus and his action in granting the writ was in all things proper and lawful, and its action therein is affirmed.

Opinion filed June 13, 1919.

Appeal from District Court, Sixth Judicial District.

Affirmed.

*W. H. Stutsman,* for appellant.

The charter of a private corporation having capital stock, organized under a general law of the state, constitutes a "contract" between the state and the corporation, between the state and the shareholders in the corporation, and between the corporation and its shareholders, which cannot be violated by the state. Larabee v. Bolley, 175 Fed. 365, 179 Fed. 461, 36 L.R.A.(N.S.) 1065, 31 Sup. Ct. Rep. 189.

The charter of a private corporation is a contract within U. S. Const. art. 1, § 10, prohibiting laws impairing the obligation of contracts so far as it is a contract between the state and the corporation, and between the stockholders and the state. Avondale Land Co. v. Shook, 170 Ala. 379, 54 So. 268.

Where a corporation is organized under the general laws of the state, its articles of incorporation, or charter, constitute a "contract" between the state and the corporation, protected by the Federal Constitution from legislation impairing its obligation. Arkansas Stave Co. v. State, 94 Ark. 27, 27 L.R.A.(N.S.) 265, 140 Am. St. Rep. 103, 125 S. W. 1001. The charter of a private corporation is a contract between it and the state, which the state, unless it reserves the right to do so, cannot alter to the prejudice of the corporation without its consent. Louisville v. Freeland, 140 Ky. 400, 131 S. W. 195.

A stockholder cannot be deprived of his vested property rights under the reserved power to amend the statute on incorporation or by-laws. Bond v. Atlantic Terra Cotta Co. 122 N. Y. Supp. 425.

The power of the state to alter or repeal corporate charters is one of regulation and control, and it cannot extend to interference with property rights vested under a legitimate exercise of the power granted. State v. R. R. Com. (Wis.) 121 N. W. 919; Com. v. Essex Co. 13 Gray, 239; Sinking Fund Cases, 99 U. S. 700, 25 L. ed. 496; Shields v. Ohio, 95 U. S. 319, 24 L. ed. 357; Miller v. State, 13 Wall. 478, 21 L. ed. 98; Holyoke Co. v. Lyman, 15 Wall. 500, 21 L. ed. 133; Persall v. Great Northern R. Co. 161 U. S. 646, 40 L. ed. 838, 16 Sup. Ct. Rep. 705.

The reserved power stops short of the power to devest property rights, and is embodied in the state Constitution for the purpose of enabling the state to retain control over corporations, and must be construed in connection with the other provisions of the Constitution, to the effect that private property shall not be taken for public use without compensation. State v. R. R. Commission, supra.

*S. L. Nuchols,* for respondent.

GRACE, J. This is an appeal from a certain order overruling a demurrer by defendant to an application for an alternative writ of mandamus and the granting of the writ, which required the defendant, Thomas Hall, as secretary of state, to file in his office certain amended articles of incorporation of the plaintiff upon the payment of a filing fee of $5 and the further sum of $6 for recording the same.

The Equity Co-operative Packing Company was organized on about the 4th of October, 1916, and its articles of incorporation were filed in

the office of the secretary of state, October 25, 1916. The purpose of the incorporation was to build and operate packing plants, slaughterhouses, stockyards, etc., and to buy, sell, and deal in cattle; hogs, sheep, poultry, etc. It was also the purpose of the corporation to carry on a business of wholesale and retail dealers in meat products, etc. Its principal place of business was at Fargo, North Dakota; the term of its existence was twenty years. The number of directors was fixed at seven. The articles of incorporation further named certain persons who were appointed to serve until the successors were elected and qualified, and they signed the articles of incorporation. The amount of capital stock was fixed at $1,000,000 divided into 40,000 shares of par value of $25 each.

At the time of the incorporation, a filing fee of $532 was paid. In January, 1919, the plaintiff decided to increase his capital stock from $1,000,000 to $3,000,000. It held a meeting of its stockholders January 17th; at that meeting 31,744 shares of stock, distributed among 5,994 stockholders, which constituted a majority of all the stockholders, voted to amend the articles of incorporation by increasing the capital stock from $1,000,000 to $3,000,000. On January 21, 1919, the plaintiff presented to the defendant, the secretary of state, a copy of the amendment and also the sum of $11, and requested the secretary of state to file and record such amendment, which the defendant refused to do on the ground that if the plaintiff was an ordinary, and not a co-operative corporation, the statutory filing fee for the amendment would be $1,000 and in addition thereto a recording fee of $6, in all $1,006, instead of the sum of $11 as claimed by plaintiff.

In the application for alternative writ of mandamus, the following allegations are set forth:

"That it was the intention and purpose of the original incorporators of the Equity Co-operative Packing Company, a corporation, and the persons who signed the articles of incorporation of said corporation, to organize a co-operative corporation pursuant to chapter 92 of the Session Laws of North Dakota for the year 1915; and the attorneys who were employed by said incorporators for the purpose of preparing the articles of incorporation of said corporation were informed that the incorporators desired and intended to organize a co-operative corporation pursuant to chapter 92 of the Session Laws of North Dakota

for the year 1915, and said attorneys were instructed to prepare articles of incorporation pursuant to chapter 92 of the Session Laws of North Dakota for the year 1915; that none of the original incorporators of said corporation or the persons who signed the articles of incorporation of said corporation are lawyers or versed in the law, and did not know that chapter 92 of the Session Laws of North Dakota for the year 1915 required the association together of not less than twenty-five persons to form a co-operative corporation pursuant to such statute, and were not informed by the attorneys who prepared the articles of incorporation for said corporation that at least twenty-five original incorporators were necessary under said statute to incorporate a corporation pursuant to said statute; and when said incorporators signed the articles of incorporation for said corporation, and filed said articles of incorporation in the office of the secretary of state for the state of North Dakota, they believed that they were incorporated pursuant to chapter 92 of the Session Laws of North Dakota for the year 1915 and intended to form a corporation pursuant to said statute; but because said incorporators were not informed as to the number of persons necessary to form a co-operative corporation pursuant to said statute, the articles of incorporation of said corporation were signed by only seven persons, and contains nothing indicating an intention to form a co-operative corporation; that the original by-laws adopted by the stockholders of said corporation provide for the distribution of profits of said corporation in part on the basis of and in proportion to the amount of property bought from or sold to members of said corporation and to other customers, and of labor performed and other services rendered to said corporation, as is shown by a copy of the original by-laws of said corporation hereto attached marked exhibit "A" and made a part of this affidavit and application; that all of the shares of the capital stock of said corporation which have been sold, have been sold upon the statements and representations of the officers and agents of said corporation that the same was a co-operative corporation; and all of the stockholders of said corporation believed the same to be a co-operative corporation which will pay patronage dividends to customers and patrons."

It also appears from the application that a special meeting of the stockholders of the corporation was had on the 29th day of October,

1918, for the purpose of voting upon accepting the benefits of chapter 97 of the Session Laws of North Dakota for the year 1917, and a majority of all the stockholders did vote to accept the benefits thereof, and to be bound by the provisions of said act pursuant to § 16 thereof; that on the 30th day of October, 1918, said corporation filed in the office of the secretary of state of the state of North Dakota a written declaration signed and sworn to by the president and secretary of said corporation, stating that at said special meeting of stockholders, said corporation had by majority vote of all the stockholders decided to accept the benefits of and be bound by the provisions of said chapter 97.

The claim of plaintiff and respondent is that, while the articles of incorporation were in form those of a general corporation, that it was in fact the purpose and intention of the incorporators to incorporate as a co-operative corporation under chapter 92 of the Laws of 1915, and that it clearly appears that such business is of a co-operative character as disclosed by an examination of its by-laws and other sources of information; that therefore the plaintiff is permitted under chapter 97 of the Session Laws of 1917 to cure the error, if any, in its incorporation, by taking the proceedings for that purpose required by said chapter, and that plaintiff has taken all such proceedings and has therefore cured such error.

The defendant demurred to the application. He thus admits all the material allegations therein. He thus admits it was the intention of the incorporators of the Equity Co-operative Packing Company to organize a co-operative corporation pursuant to chapter 92 of the Session Laws of 1915; that when the incorporators signed and filed the articles of incorporation they believed they were incorporating pursuant to said chapter; admits whatever is contained in the by-laws of the plaintiff as they were made a part of the affidavit and application for the writ; admits that the different meetings of the stockholders for the purpose of voting and accepting the benefits of chapter 97 of the Session Laws of 1917 were held, and that a majority of all the stockholders did vote to accept the benefits thereof; and all similar matters that are alleged are thus admitted; admits that the articles of incorporation were by mistake signed by seven instead of twenty-five signers as required by Session Laws of 1915.

We are of the opinion that chapter 62 of the Laws of 1909 have no

application to the facts in this case; that chapter 92 of the Session Laws of 1915 is not an amendment thereof, but is a separate and distinct law under which the plaintiffs could incorporate; in it there is no limitation of the amount of capital stock for which incorporation may be made. Under said chapter 92, such co-operative association or corporation may be incorporated for the co-operative transaction of *any lawful business* including the construction of canals, railways, irrigation ditches, bridges, and other works of internal improvement. There is thus no limitation as to the kind or character of business that may be engaged in; it is a much broader and different law to that of 1909. Chapter 92 repealed all acts or parts of acts in conflict with it. Section 4 of chapter 62 of the Laws of 1909, relative to the limitation of the amount of capital stock for which a co-operative corporation may be organized, is in conflict with it and was by it repealed. Under chapter 92 there was no limitation upon the amount of capital stock. Section 4 of chapter 62 of the Laws of 1909, which is the same as § 4606 of Compiled Laws of 1913, was re-enacted in chapter 95 of Compiled Laws of 1917, with the exception that there was no limitation placed upon the amount that might be designated as the capital stock thereof, under chapter 95 the amount of capital stock was required to be stated in the articles of incorporation.

After § 4606 was re-enacted, there being no limitation to the amount of capital stock for which a co-operative corporation might be organized, it became in this respect identical with § 92, in which there was no limitation as to the amount of capital stock. The only difference in this respect between the two sections is that in chapter 95 the amount of the capital stock must be stated. In chapter 92 there is nothing said about the capital stock, no limitation placed thereon, and it must follow that the capital stock thereunder could be any amount the incorporators saw fit to name. We do not believe there is any constitutional question presented in this case. There is no question presented in this case concerning the election of directors or managers of the corporation. The sole question presented is to determine whether or not the plaintiff is an ordinary or a co-operative corporation. From the allegations in the application and affidavit for a writ of mandamus, and from the demurrer thereto, which admits all such allegations, we think it stands conceded that the plaintiff is a co-operative corporation; that

42 N. D.—34.

it attempted to organize under chapter 92 of the Session Laws of 1915. This being true, it comes under and is entitled to all the benefits and privileges set forth in chapter 97 of the Session Laws of 1917, and especially to § 16 thereof; that, being a co-operative corporation, the filing fee of $5 and recording fee of $6 was the proper amount to tender the secretary of state, the defendant herein, for the purpose of having the amendment of its articles of incorporation filed and recorded.

We have considered all the points presented in this appeal, and we find no necessity of further discussion of them. The order of the District Court that the peremptory writ of mandamus issue is in all things affirmed.

Robinson, J. (dissenting). The purpose of this suit is to obtain a writ of mandamus commanding Thomas Hall, as secretary of state, to receive and file amended articles of incorporation, increasing the capital stock from $1,000,000 to $3,000,000. The writ of mandamus may be issued to a person to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station. Comp. Laws, § 8457. The question is: Was it the plain duty of Thomas Hall to receive and file the amended articles without receiving the regular incorporation fee of $5 for every $10,000 increase of the capital stock, as provided by statute? Sections 4509, 4510.

In October, 1916, the plaintiff filed with the secretary of state articles of incorporation signed by seven persons as directors, viz.: M. P. Johnson, Tolley, N. D.; A. M. Baker, Fargo, N. D.; F. J. Lee, Valley City, N. D.; Anthony Walton, Minot, N. D.; P. H. Casey, Lisbon, N. D.; J. C. Bergh, Hendrum, Minn.; J. C. Leum, Mayville, N. D.

The articles are in effect: (1) The purpose of the corporation is to do a general packing-house business, with its principal office at Fargo; (2) the number of directors shall be seven; (3) the amount of its capital stock shall be $1,000,000. The stockholders shall be entitled to receive a cumulative dividend of 8 per cent.

In accordance with the statute the plaintiff paid the secretary of state the sum of $533. Manifestly the plaintiff was incorporated under the general laws, and under such laws it was not entitled to in-

crease its capital stock without paying a fee of $5 for each 10,000 of the increase. The application for the writ was based merely on the presentation made to Thomas Hall. This suit is based on a verified complaint, dated February 5, 1919, and on a copy of the by-laws of the company. The complaint avers that plaintiff is a co-operative packing company; that it was the purpose of the original incorporators to organize as a co-operative corporation under chap. 92, Laws 1915, and that by mistake of their counsel, who drafted the articles, they organized as they did under the general laws; that the by-laws provide for the distribution of profits in accordance with chapter 92; that in 1918, at a special meeting of the stockholders, a majority of all the stockholders voted to accept the benefits and to be bound by the provisions of chapter 97, Laws 1917. On October 30, 1918, it filed in the office of the secretary of state a written declaration, signed and sworn to by its president and secretary, stating that at such special meeting the stockholders, by a majority vote, agreed to accept the benefits and to be bound by the provisions of said chapter 97; that at a meeting of the stockholders in January, 1919, at which more than two thirds were present, they voted to amend the articles of incorporation by increasing the capital stock to $3,000,000, and the secretary of state was duly requested to file and record such amendment on payment of $11, but he demanded an additional sum of $1,000.

The complaint is in the nature of a bill in equity, appealing to the court to excuse the carelessness of the plaintiff and its counsel, by which they incorporated under the general laws, when their purpose was to incorporate under chap. 92, Laws 1915, but it does not appear that any such excuse was presented to the secretary of state, or that the statute made it his plain duty to act the part of a clairvoyant or a mindreader so as to determine what the plaintiff intended to do, and to correct its mistakes. Furthermore, it does appear from a copy of the by-laws (§ 28), submitted as a part of the complaint, that it is not the purpose of the plaintiff to distribute its earnings in accordance with chapter 92. By said § 28 it is provided that, after a sinking fund has been provided and all running expenses and dividends paid, a sum not to exceed 10 per cent of the remaining net profits shall be paid to the American Society of Equity for educational purposes, which shall be prorated among the several states, and the remainder of the net

profits shall be apportioned among the patrons as a patronage dividend. Now it is clear that does not accord with chapter 92, and it does not appeal to equity. It does not show an honest and good-faith purpose to deal fairly with the stockholders and to compete successfully against the great packers, who do not give away 10 per cent of their net earnings. Furthermore, there is no showing that the contemplated increase of stock is in accordance with the letter or the spirit of the Blue Sky Law (Laws 1915, chap. 91). Clearly the application should be denied.

CHRISTIANSON, Ch. J. (concurring specially). This is a mandamus proceeding wherein the relator asks that the secretary of state be compelled to file certain amended articles of incorporation. The controversy arises over the amount of filing fee to be paid. The relator claims that it is a co-operative corporation, and is entitled to have these articles filed upon the payment of the sum of $11. The respondent contends that the relator has not shown itself entitled to be classified as a co-operative corporation and therefore is required to pay the fee exacted from general corporations. The relator interposed a general demurrer to the application for the writ, and the question presented is whether plaintiff's application states facts sufficient to entitle it to the relief sought.

In 1909 the legislature of this state first provided for the incorporation and regulation of co-operative associations. See chap. 62, Laws 1909. In this act the amount of capital stock to be issued by such associations was limited to $50,000. The act also provided that no member should own shares of a greater par value than $1,000. In 1915 the legislature enacted an act to define co-operative associations and to authorize their incorporation. Laws 1915, chap. 92. This statute defined a co-operative company, corporation, or association, to be one "which authorizes the distribution of its earnings in part, or wholly, on the basis of, or in proportion to, the amount of property bought from or sold to members, or to members and other customers, or of labor performed, or other services rendered to the corporation." The act provided that "any number of persons not less than twenty-five may be associated and incorporated for the co-operative transaction of any lawful business." The act further provided that "any co-operative [company], corporation, or association, being under the definition

given in § 1 of this act is hereby authorized to file with the secretary of state a declaration signed by its president and secretary stating that it is a co-operative corporation or association as above defined, that at a meeting of the stockholders held in which all stockholders were represented all stockholders unanimously consented to come under the provisions of this act," and that upon the filing of such certificates the corporation shall be entitled to the same legal recognition as though its articles of incorporation had originally been filed under this act. In 1917 the legislature enacted a law amending the provision of chapter 62, Laws 1909, by removing the limit of $50,000 placed upon the amount of the capital stock to be issued by co-operative corporations. Laws 1917, chap. 95. It also enacted an act relating to the incorporation of co-operative associations, the fees to be paid therefor, and the powers and duties and obligations thereof. Laws 1917, chap. 97. This statute provided that a co-operative association may be formed by any number of persons not less than fifteen. This statute also contained the following provision, the construction and application of which forms the basis of this controversy, to wit: "All co-operative corporations, companies, or associations heretofore organized and doing business under prior statutes, or which have attempted to so organize and do business, under prior statutes, . . . shall have the benefit of all the provisions of this act, and be bound thereby on filing with the secretary of state a written declaration signed and sworn to by the president and secretary to the effect that said co-operative company or association has by a majority vote of its stockholders decided to accept the benefits of and to be bound by the provisions of this act. No association organized under this act shall be required to do or perform anything not specifically required herein, in order to become a corporation or to continue its business as such."

It will be noted that there is a marked distinction between chapter 92, Laws 1915, and chapter 97, Laws 1917, as regards the right of existing corporations, and the powers and duties of the secretary of state as to such corporations when they endeavor to claim the benefit of laws applicable to co-operative corporations. Under the provisions of chapter 92, Laws 1915, any general corporation might become a co-operative corporation upon the assent of all of its stockholders, by filing the proper certificate with the secretary of state. Under that

act the duties of the secretary of state were merely ministerial. If the certificate tendered to him was in proper form and accompanied by the proper fee, he must file it. But chapter 97, Laws 1917, does not enable general corporations to declare themselves to be co-operative corporations. Only those corporations which have been organized and are doing business under prior statutes as co-operative associations, or which "have attempted to so organize and do business," are entitled to claim or obtain the benefits thereof. Who is to determine, in the first instance, whether a corporation is one entitled to qualify under the act? No specific provision is made in the act for such determination by anyone, unless it be by the secretary of state. The certificate must be filed with him. And of course, when a corporation seeks to qualify under the act, he necessarily determines whether it has shown a prima facie right to do so. In this case the relator was permitted to qualify under the act.

The matter comes before us on a demurrer to the application for the writ. The articles of incorporation are not before us, except in so far as the contents thereof are averred in the application. I am by no means clear as to what the legislature meant by the language employed in the Act of 1917. And while I have considerable doubt upon the matter I am not prepared to say that the majority members are in error in holding that the facts alleged show that the incorporators of the relator "attempted" to organize a co-operative corporation.

Manifestly the questions involved are such that it is not at all strange that the secretary of state should have been in doubt as to the fee to exact from the relator. It is not denied that the secretary of state has acted in good faith in the matter. He has not questioned the propriety of the remedy employed by the relator, or placed any obstacles in the way of obtaining a speedy determination of the question involved. In his brief, relator's counsel expresses his appreciation of the courtesies shown by the adverse party during the course of the litigation, and the assistance given to the end that a speedy determination might be obtained of the questions involved. Under the circumstances it is only right no costs whatever should be awarded against the respondent. See State ex rel. Baker v. Hanna, 31 N. D. 570, 579, 154 N. W. 704.