MOHALL FARMERS' ELEVATOR COMPANY, a Corporation, Appellant, v. THOMAS HALL, Secretary of State of the State of North Dakota, Respondent.

(176 N. W. 131.)

**Mandamus — refusal of secretary of state to file certificates — question as to whether majority stockholders are depriving minority stockholders of their rights cannot be raised by secretary of state.**

This is a mandamus proceeding against the secretary of state to compel him to receive and file a certain certificate presented by the plaintiff corporation on August 4, 1919, showing that said corporation by a majority vote of its stockholders on July 12, 1919, decided to accept the benefits of and to be bound by the provisions of chapter 99, Laws 1919. The secretary of state asserts that the statute is unconstitutional for the reason that it impairs.

the contract obligations existing in favor of stockholders, and that as to stockholders who do not consent it is violative of the contract and due process provisions of the Federal Constitution. For reasons stated in the opinion it is *held* that these defenses are not available to the secretary of state.

Opinion filed January 5, 1920.

Appeal from the District Court of Burleigh County, *Nuessle,* J.

Plaintiff appeals from an order sustaining a demurrer to its petition for a writ of mandamus.

Reversed.

*Nuchols & Kelsch, Geo. I. Rodsater,* and *Benjamin Drake,* for appellant.

No private corporation for profit can be created except by general laws for the organization of all corporations, and any such law shall be subject to future repeal or alteration. Const. § 131, art. 7.

A corporation is a creature of the law. Comp. Laws 1913, § 4494.

Every grant of corporate power is subject to alteration, suspension, or repeal in the discretion of the legislative assembly. Comp. Laws 1913, § 4495; Pratt Institute v. New York City, 183 N. Y. 151, 75 N. E. 1119; Citizens Sav. Bank v. Owensburg, 173 U. S. 636.

All presumptions are in favor of the constitutionality of a law, and the burden is upon the person attacking the constitutionality thereof to show beyond a reasonable doubt that Constitution has been violated. State v. Armour & Co. 27 N. D. 177; State ex rel. Gaulke v. Turner, 37 N. D. 635, 164 N. W. 924.

*William Langer,* Attorney General, *Edw. B. Cox,* Assistant Attorney General, for respondent.

It is well settled that there is a contract between a corporation and every person who becomes a stockholder or member thereof, either at the time of its creation or afterwards, that the business of the corporation shall be conducted within the limits fixed by the charter, and that there shall be no departure from the objects for which the corporation was created. Stevens v. Rutland & B. R. Co. 29 Vt. 203; Zabriskie v. Hackensack & N. Y. R. Co. 18 N. J. Eq. 178, 90 Am. Dec. 617; Mowry v. Indianapolis R. Co. 4 Biss. 78, 17 Fed. Cas. 9891; Academy of Music v. Flanders, 75 Ga. 14; Alexander v. Atlanta R.

Co. 108 Ga. 151; Frye v. Lexington R. Co. 2 Met. (Ky.) 314; Howey v. Henderson, 32 La. Ann. 1069; New Orleans R. Co. v. Harris, 27 Miss. 517; Kean v. Johnson, 9 N. J. Eq. 401; Black v. Delaware, 24 N. J. Eq. 401; Everhart v. West Chester R. Co. 28 Pa. 339; 24 Ann. Cas. 1203; 7 R. C. L. § 72; Clearwater v. Merideth, 1 Wall. 25, 17 L. ed. 604; Chicago City Co. v. Albertun, 18 Wall. 233, 21 L. ed. 902; American Printing House for Blind v. Trustees, 104 U. S. 711; Perkins v. Coffin, 84 Conn. 275; Hartford Railroad Co. v. Croswell, 5 Hill, 383; Kenosha, Rockford & R. I. R. R. v. Marsh, 17 Wis. 13; New Orleans, J. & G. N. R. Co. v. Harris, 27 Miss. 517; Winter v. Muscoge R. R. 11 Ga. 438; Garey v. St. Joe Min. Co. 32 Utah, 497, 12 L.R.A.(N:S.) 594, 91 Pac. 369.

CHRISTIANSON, Ch. J.   The plaintiff corporation is an elevator company engaged in buying, storing, and handling grain. It was incorporated under the laws of this state relating to the formation of general corporations on April 10, 1906, and the certificate of corporate existence was issued to it by the secretary of state on that date. On June 1, 1906, certain by-laws were adopted. Article 8 of such by-laws reads:

"Dividends and Profits.

"Section 1. The profits and accumulations of this corporation shall be divided annually, as follows:

"1st. There shall be reserved and set aside as a surplus fund, 10 per cent of the net earnings of the corporation, annually.

"After the 10 per cent of the net earnings has been deducted as above, it shall be divided between the stockholders, as follows:

"There shall be paid to each shareholder of this corporation the net profits accruing from the number of bushels of grain sold by said shareholders to the corporation, provided nevertheless, that all grain sold by a shareholder to the corporation shall be grown on land owned by said shareholder, or on land rented by him, and if on rented land, only on such share as belongs to him.

"2d. There shall be paid to each shareholder according to his holdings a dividend on the balance of profits remaining."

This article has never been repealed or altered, but has remained in full force as originally adopted.

The legislative assembly in 1919 enacted a law which, among other things, provided: "All co-operative corporations, companies, or associations heretofore organized and doing business under prior statutes, or which have attempted to so organize and do business under prior statutes, or which have attempted to so organize and do business, or which prior to March 12, 1917, were organized under the general corporation laws of the state, and whose articles of incorporation or by-laws did then provide for distribution of any portion of earnings or profits upon a co-operative basis, shall have the benefit of all of the provisions of this act, and be bound thereby on filing with the secretary of state a written declaration signed and sworn to by the president and secretary to the effect that said co-operative company or association has, by a majority vote of its stockholders, adopted at any time subsequent to March 12, 1917, decided to accept the benefits of and to be bound by the provisions of this act. No association organized under this act, or which has adopted the provisions of this act shall be required to do or perform anything not specifically required therein, in order to become a corporation or to continue its business as such." Laws 1919, chap. 99.

The plaintiff corporation has a subscribed capital stock of 190 shares, held by 68 different stockholders. A regular stockholders' meeting was held July 12, 1919. There was present at such meeting 51 stockholders, owning 158 shares of the capital stock. Fifty of the stockholders present, owing 157 shares of stock, voted in favor of the corporation accepting the benefits of and being bound by the provisions of the above-quoted statute; and one stockholder owning one share of stock voted against the proposition.

On August 4, 1919, plaintiff presented to the defendant secretary of state for filing a written declaration signed and sworn to by its president and secretary, setting forth that at a meeting of the stockholders thereof held on July 12, 1919, said corporation had, by a majority vote of its stockholders, decided to accept the benefits of and to be bound by the provisions of said law, and tendered to the defendant the fee provided by law for filing such declaration. The defendant refused to file the same. The plaintiff thereupon brought this proceeding in the district court of Burleigh county to procure a peremptory writ

44 N. D.—28.

of mandamus requiring defendant to receive and file such declaration. The above-stated facts were set forth in the plaintiff's petition. The defendant demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained and plaintiff has appealed.

The defendant contends that chapter 99, Laws 1919, in so far as it permits a majority of the stockholders in a corporation organized under the general corporation laws of the state to transform the same into a corporation operated on the co-operative plan, is unconstitutional for the reason that it impairs the obligation of contracts as to the stockholders who do not consent to the change, and in effect deprives such stockholders of their property rights without due process.

To this contention the plaintiff makes answer:

(1) That the defendant has no right to raise these constitutional questions; and,

(2) That the state by § 131 of the Constitution and § 4495, Comp. Laws 1913, has reserved the right to enact such legislation.

In the celebrated Dartmouth College Case, 4 Wheat. 518, 4 L. ed. 629, the Supreme Court of the United States held that the charter of a corporation is a contract and entitled to protection under the provision of the Constitution of the United States which prohibits the several states from passing any law impairing the obligation of contracts. The same doctrine is of course applicable to corporations organized under a general corporation law. 7 R. C. L. p. 95. To avoid the rule laid down in the Dartmouth College case many of the states, either by constitutional or statutory provisions, similar to § 131 of the Constitution and § 4495, Comp. Laws 1913, reserved the right to alter or repeal the charters granted to any corporation or the laws under which it was created. Fletcher, Cyc. Corp. § 4007.

But the charter of a corporation constitutes not only a contract between the state and the corporation. It constitutes also a contract between the corporation and its stockholders and between the stockholders *inter se*, which latter contracts are entitled to protection under the Federal constitutional provision prohibiting the several states from passing any law impairing the obligation of contracts. 7 R. C. L. p. 97. And there is a diversity of judicial opinion as to the extent of

reservations like those embodied in § 131 of the Constitution and § 4495, Comp. Laws 1913, and to what extent, if at all, they are applicable to the contractual obligations existing between the corporation and its stockholders and between the stockholders *inter se.* Some courts have held that the reservation by the state of the power to alter or repeal the charter of a corporation or the laws under which it was created is intended not merely for the protection of the public, but also to enable the legislature in effect to change the contract between the corporation and its stockholders. Other courts have held that such power is not reserved in any sense for the benefit of the corporation, or of a majority of the stockholders, upon any idea that the legislature can alter the contract between the corporation and its stockholders, nor for the purpose of enabling it to do so, but that the power is reserved solely for the purpose of avoiding the effect of the decision in the Dartmouth College case, and to enable the state to impose such restraints upon corporations as the legislature may deem advisable for the protection of the public. See Fletcher, Cyc. Corp. §§ 4005–4007.

We do not find it necessary in this case to determine which of these views is the correct one. Nor do we find it necessary to determine whether chapter 99, Laws 1919, as applied to corporations organized under the general corporation laws of this state, contravenes the provisions of the Federal Constitution which prohibit the several states from depriving any person of life, liberty, or property without due process of law; and from passing any law impairing the obligation of contracts. For the question of constitutionality should not be determined unless it is necessarily involved and raised by one who has an interest in the question, in that the enforcement of the law would infringe rights guaranteed to him by the constitutional provision or provisions invoked. And "one who is not prejudiced by the enforcement of an act of the legislature cannot question its constitutionality, or obtain a decision as to its invalidity on the ground that it impairs the rights of others." 6 R. C. L. pp. 89–90.

The United States Supreme Court has held in many cases that a party who asserts that a state statute is violative of the due process or contract clauses of the Federal Constitution must show that he comes within the class protected by the provisions, and that he is one of

those whose constitutional rights are alleged to have been invaded. It has said that "unless the party setting up the unconstitutionality of the state law belongs to the class for whose sake the constitutional protection is given, or the class primarily protected, this court does not listen to his objections, and will not go into imaginary cases notwithstanding the seeming logic of the position that it must do so, because if for any reason, or as against any class embraced, the law is unconstitutional, it is void as to all." New York ex rel. Hatch v. Reardon, 204 U. S. 152, 51 L. ed. 415, 27 Sup. Ct. Rep. 188, 9 Ann. Cas. 736. That court has also held "that a party insisting upon the invalidity of a statute, as violating the contract clause of the Federal Constitution, must show that he may be injured by the unconstitutional law, before the courts will listen to his complaint. If, instead of showing any injury, the plaintiff shows that he cannot possibly be injured, he cannot, of course, ask the interference of the court." 6 Enc. U. S. Sup. Ct. Rep. 885. That "the parties to a contract are the ones to complain of a breach, and if they are satisfied with the disposition which has been made of it and of all claims under it, a third party has no rights to insist that it has been broken, nor invoke the constitutional provision as to impairment of obligation of contracts. In other words, a person who has no interest in the contract, as by being a party to it, cannot complain of a law alleged to impair its obligation." 6 Enc. U. S. Sup. Ct. Rep. p. 885.

Under the general principle that the constitutionality of a statute cannot be questioned by one whose rights it does not affect, and who has no interest in defeating it, the question has frequently arisen whether a public officer has such interest as entitles him to question the constitutionality of a statute and refuse to comply with its provisions. There is considerable conflict in the authorities upon the general proposition whether, in an action to enforce the performance of a statutory duty by a ministerial officer, he may question the constitutionality of the statute imposing the duty. In some cases the right is denied. In other cases it is held that the constitutionality of a statute imposing a duty may be questioned under certain circumstances. 12 C. J. 765.

It has been said that "the better doctrine, supported by an increasing weight of authority, is that a mere subordinate ministerial officer, to

whom no injury can result and to whom no violation of duty can be imputed by reason of his complying with a statute, will not be allowed to question its constitutionality; but that the constitutionality of a statute may be questioned by an officer who will, if the statute is unconstitutional, violate his duty under his oath of office, or otherwise render himself liable, by acting under a void statute." 12 C. J. 765. See also 6 R. C. L. p. 92, § 92. This principle was recognized in State ex rel. Miller v. Leech, 33 N. D. 513, 157 N. W. 492, where this court held that under the great weight of authority a public official cannot, under ordinary circumstances, raise the question of constitutionality in a mandamus proceeding; but that under the peculiar facts in that case (where the county auditor was required to determine whether to recognize the assessment which had been made by the state tax commission, or the assessment which had been made by the local assessor and reviewed and equalized by the local and the county boards of equalization) the county auditor might assert, in defense of his official action in recognizing one assessment and refusing to recognize the other, that the law under which the latter assessment was attempted to be made was unconstitutional. But no such condition exists in this case as that which existed in State ex rel Miller v. Leech, supra. Here the defendant is not required to determine which of two conflicting official acts he must recognize; or which of two conflicting statutes is valid. Here the statute is plain, and defendant can incur no liability by performing the acts which the statute says he shall perform. If the statute is unconstitutional, it is so solely because it violates the constitutional rights of stockholders who do not consent to a change of the corporation to the co-operative plan. It is not contended that any right of the state or the public generally is in any manner violated or impaired. We are of the opinion that the secretary of state cannot be heard to assert in this proceeding that the rights of nonconsenting stockholders have been or may be violated. Such stockholders are the proper parties to defend their rights, and the law affords them ample remedies for that purpose.

The order appealed from is reversed, and the cause remanded for further proceedings in conformity with the views expressed in this opinion. No costs will be allowed to either party on this appeal.

BIRDZELL, BRONSON, and ROBINSON, JJ., concur.

GRACE, J. (concurring in result). Section 16 of chapter 97 of the Session Laws of 1917, which is identical with § 16 of chapter 99 of the Session Laws of 1919, was before this court for construction, in the case of the Equity-Co-op. Packing Co. v. Hall, and the decision in that case is reported in 42 N. D. 523, 173 N. W. 796.

In that case, it was in effect held that the plaintiffs were entitled to the benefits of chapter 97. In that case, however, there was presented no constitutional question, as is presented in the present case.

I concur in the result of the opinion of the court, as written by Chief Justice Christianson.