(103 N. W. 417.)

---

RED RIVER VALLEY NATIONAL BANK v. THE CITY OF FARGO.

Opinion filed February 8, 1905.

**Municipal Corporations — Special Assessments — Warrants Drawn on Proceeds — Violations of Constitutional and Statutory Provisions.**

1. Where the city has received from the property owners the amount of taxes and special assessments levied for the specific purpose of paying for a work of local improvement, it cannot justify its refusal to redeem the warrants issued in payment for such work on the ground that the contract and the taxes and assessments for the improvement were invalid because in violation of constitutional or statutory provisions designed solely for the protection of the taxpayers.

**Proceeds of Assessments Are Trust Funds — Liability of City.**

2. Money derived by a city from special assessments becomes a trust fund in its custody, to be applied to the redemption of warrants drawn

upon such fund in the order in which the warrants were presented for payment, and the city is liable to any warrant holder whose rights have been infringed by a misapplication of such funds.

Appeal from District Court, Cass county; *Pollock, J.*

Action by the Red River Valley National Bank against the city of Fargo. Judgment for plaintiff, and defendant appeals.

Affirmed.

*M. A. Hildreth,* for appellant.

The plaintiff failed to establish a cause of action and did not prove the material allegations of the complaint. The action is in tort for a wrong done the plaintiff, and proof to sustain the complaint ought to be in harmony with it. Plaintiff offered certain exhibits in evidence to which objection was made by the defendant. These exhibits were certain alleged contracts out of which the plaintiff's claim grew. The objections to these were sound. The plaintiff did not plead the contracts, or base his action upon a contract, nor did he establish that they were lawfully made by the defendant. The contracts were void, as the yeas and nays were not taken upon the proposition to create the liability against the city, or for the expenditure or appropriation of money. Section 2143, Rev. Codes 1899.

The contracts were further void, as no appropriation had been previously made concerning the expense involved in the contracts. Section 2264, Rev. Codes 1899.

Another of the contracts offered in evidence was void, as it contained a provision that the Northern Pacific Railway Co. should ship material for the paving to be done and its charges for freight should be applied upon its taxes. It is the duty of the city treasurer to receive all money belonging to the city from taxes and special assessments, and that such money should be paid out by the treasurer upon a warrant by the mayor countersigned by the auditor. Section 2176-77, Rev. Codes 1899. It is the duty of the city treasurer to hold all money received on special assessment in a special fund to be applied to payment of improvements for which the assessment was made, and such sums shall be used for no other purpose. Section 2183, Rev. Codes 1899.

Under such provisions the city could not contract with the Northern Pacific Railway Co. to ship freight in payment of its taxes.

Defendant may raise the question that the contract is ultra vires and void although the paving has been done. Engstad v. Dinnie, 8 N. D. 1, 76 N. W. 292; Goose River Bank v. Willow Lake School Twp., 1 N. D. 26, 44 N. W. 1002; City of Litchfield v. Ballou, 114 U. S. 190, 29 L. Ed. 132; Roberts v. City of Fargo, 10 N. D. 230, 86 N. W. 726.

The warrants were void because at the time of the making of the contract the city had exceeded its debt limit. Const. of N. D., section 183; section 2148, subdiv. 5, Rev. Codes 1899.

*Ball, Watson & Maclay,* for respondent.

The entire cost of paving the streets, including street intersections, should have been assessed against abutting property. Section 2280, Rev. Codes 1895; Wright v. City of Tacoma, 19 Pac. 42; Walters v. Town of Lake, 21 N. E. 556; Wolf v. City, 48 Iowa, 129; Smith v. Buffalo, 54 N. E. 62; Cunningham v. City of Peoria, 41 N. E. 1014.

The warrants in suit were drawn upon the paving funds, and not upon the street intersecting fund, and were paid from special assessments. If the annual appropriation bills, in which were included sums covering the cost of street intersections, were void because the yea and nay vote was not recorded, this would not affect that portion of the contracts as to which the cost was to be raised by special assessments. Ft. Dodge Electric L. &. P. Co. v. City of Ft. Dodge, 89 N. W. 7.

A previous appropriation, where improvements are to be paid by special assessment, is not necessary. Pine Tree Lumber Co. v. Fargo, 12 N. D. 360, 96 N. W. 357.

The city had power to make the paving contracts in question; it permitted the contractors in good faith to spend their money for its benefit and enjoy the fruits of the contract. It is now estopped to say the contracts and the warrants issued under them are invalid because the city auditor neglected to record the yea and nay vote authorizing the making of the contracts. Moore v. N. Y., 73 N. Y. 238; Ft. Dodge Electric L. & P. Co. v. City of Ft. Dodge, 89 N. W. 7; Barber v. Denver, 72 Fed. 336; Argenti v. City of San Francisco, 16 Cal. 256; Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659; Commercial Nat. Bank of Portland v. City of Portland, 33 Pac. 532; Erickson v. Cass County, 11 N. D. 494, 92 N. W. 841; Hockaday v. Board of County Commissioners, 29 Pac. 287.

The city is liable for breach of its duties as trustee. Pine Tree Lumber Co. v. Fargo, supra.

The city violated its duty to the holders of the warrants by diverting paving funds to the payment of warrants registered subsequently to those in suit. Pine Tree Lumber Co. v. Fargo, supra.

Independently of the contract, and without regard to its validity or invalidity, the appellant was liable for negligence in the execution of the trust which it voluntarily undertook to perform, and which was within the scope of its municipal powers. Pine Tree Lumber Co. v. Fargo, supra; Argenti v. City of San Francisco, 16 Cal. 256.

Contracts to be met by special assessments do not create a debt as to the city. Ft. Dodge Electric L. & P. Co. v. City of Ft. Dodge, 89 N. W. 7; Swanson v. Ottumwa, 91 N. W. 1048; Winston v. City of Spokane, 41 Pac. 888; 20 Am. & Eng. Enc. Law (2d Ed.) 1176; Pine Tree Lumber Co. v. Fargo, supra.

ENGERUD, J. The complaint sets forth three causes of action, the first of which is in substance as follows: On October 7, 1895, the defendant city issued to McDonald & O'Neil a warrant for the payment to them of $500 out of the Front street paving fund of said city, which warrant was issued in part payment of the agreed price for paving part of said street. That said paving had been done by McDonald & O'Neil under a contract with the city wherein said contractors agreed to do the paving for a fixed price, and were to be paid by the city in warrants drawn upon, and payable out of, a paving fund to be created and collected by the defendant under and pursuant to the laws of the state applicable to the paving of cities. That the warrant was presented for payment, and not paid for want of funds, and was subsequently assigned to plaintiff. That the city collected and received into its treasury money properly applicable to the payment of the warrant in question sufficient in amount to pay the same, but wrongfully applied such money to the satisfaction of other warrants subsequently presented and registered for payment. It is further alleged that, if sufficient money had not been collected to pay all such paving warrants, such failure was due to the neglect of the city to take proper steps to that end. The second and third causes are in the same form. The second is based upon a second Front street paving warrant held by plaintiff, and the third is upon a similar warrant issued under a contract for paving Eighth street, similar in terms to the Front street contract. The answer was a general denial and certain affirmative al-

legations, which will be hereinafter mentioned, to the effect that the contracts and warrants in question were invalid. There was a trial by jury, and a directed verdict for plaintiff. Defendant's motion for a new trial based upon a statement of the case was denied. The appeal is from the judgment, and the order refusing a new trial.

It is claimed in behalf of the appellant that when the city council decided to have this paving done, and made the contract therefor, the city's indebtedness exceeded the constitutional limit of 5 per cent of the assessed valuation of taxable property therein; that the contract, at least to the extent of the cost of street intersections, purported to create an indebtedness against the city payable by general taxation; that no appropriation for that purpose preceded the contract, and there was no record of the yea and nay vote of the members of the council with respect to the incurring of the debt and the disbursement of the moneys therefor. By reason of these facts, all of which did not appear in the case of Pine Tree Lumber Co. v. City, 12 N. D. 360, 96 N. W. 357, which involved this same paving contract, it is urged that that case is not decisive of this; and the correctness of that decision in some respects is also questioned. It will be unnecessary to pass upon these propositions, because we are agreed that the city is not in a position, under the undisputed facts of this case, to escape liability by urging the invalidity of the acts of its officials which preceded and resulted in the payment into its treasury of the money collected and received by it for the sole purpose of paying for that part of the value of the paving represented by plaintiff's warrants.

With respect to the Front street paving, the undisputed facts are that on July 29, 1895, pursuant to some resolution or ordinance which does not appear, the city made a contract with McDonald & O'Neil whereby the latter undertook to pave a part of Front street for an agreed price, payable in city warrants from time to time as the work progressed. The paving was completed and accepted, and warrants were issued to the contractors in payment therefor; amongst them being the two warrants in suit, Nos. 11,217 and 11,219. The total cost of the work for which warrants were issued was $23,025.22. For some reason which does not appear, the entire cost of the paving was not assessed upon the abutting property. The cost of paving the street intersections was paid for from a fund styled "Street Intersection Fund," which was created by general taxation. The remainder of the cost of the work was pro-

vided for by special assessments upon the abutting property. The cost of the intersections was $4,952.89, for which warrants were drawn upon the Front street intersection fund, and all of these warrants have been paid. The special assessments aggregated $18,025.22, and warrants aggregating that amount—amongst them being the two in question—were issued upon such special assessment fund. All of these warrants have been paid, except the two in question, and a third one, which was presented for payment, registered and marked, "Unpaid for want of funds," tenth in order after No. 11,219. All these special assessments have been paid, except one, the amount of which does not appear; and the lot subject to this unpaid assessment was sold and bid in by the county at the delinquent tax sale of 1897. There were ten special assessment warrants presented to and registered by the city treasurer on his warrant book after the two in question. Nine of these subsequently presented warrants, aggregating more than $1,500, have been paid. It was the duty of the treasurer to immediately register each warrant presented for payment, and to pay such registered warrants, or call them in for payment, in the order of presentation, as soon as he received sufficient money to pay them, belonging to the fund upon which the warrants were drawn. Rev. Codes 1899, sections 1293-1295, 2178.

The money derived from special assessments cannot be diverted to any other use than the payment of the obligation for which the assessment was made. Rev. Codes 1899, section 2183. When sufficient money had been collected from the special assessment to pay all the warrants presented and registered for payment prior to the two in question, every dollar thereafter coming to that fund, up to the amount required to redeem each of these warrants, became impressed with a trust in favor of the holder of each warrant, and the city was the trustee. If the trust funds were misapplied, the city is liable to the same extent as any other unfaithful trustee. Pine Tree Lumber Co. v. City, 12 N. D. 360, 377, 96 N. W. 357, and authorities there cited.

The limitations upon the debt-creating power, the inhibition against contracts without a prior appropriation therefor, the provisions requiring the recording of the yeas and nays upon propositions to appropriate or expend money, and other provisions of that character, whether constitutional or statutory, were designed for the protection of those upon whom, as taxpayers, the burden of the

municipal obligation rests. It is self-evident that those for whose benefit these protective provisions were designed can waive that protection. In this case such waiver is evidenced most unequivocally. The intersection fund warrants have all been paid. Those liable for assessments have paid into the city treasury, to be applied upon the special assessment warrants in the order of registration, money enough, which, if properly applied, would have paid the warrants in question and all of those which had been previously registered. The money paid for these special assessments was paid to and received by the city for the sole purpose of paying for this paving. It is too clear for argument that the city cannot be heard to say that it is under no obligation to pay the money so received to those for whose benefit it was paid because those who paid it could not have been compelled to do so. Substantially the same state of facts was shown in support of the third cause of action for the Eighth street paving warrant.

It is finally urged that the diversion of the money was the wrongful act of the city treasurer, for which he, and not the city, is liable. That argument is manifestly untenable. There is no privity between the creditors of the city and the treasurer. The latter is the agent of the muncipality, and for any violation of his duties he is answerable to his principal. The receipt of the money imposed an obligation upon the city in favor of the contractors or their assignee. The malfeasance or misfeasance of the treasurer can no more absolve the city from its obligations to third persons than could like acts by an agent of a private person relieve his principal of like obligations.

Some of the evidence which was admitted to establish some of the material facts upon which we base this decision was objected to for incompetency and immateriality. Numerous assignments of error are based upon such rulings of the trial court. The materiality of the evidence has already been shown. Counsel have not pointed out any reason to question the competency of the proof, and, where a ruling is not palpably erroneous, this court will not search for error. Supreme Court rule 14.

The judgment and order appealed from are affirmed. All concur. (103 N. W. 390.)