STATE OF NORTH DAKOTA, EX REL., OTTO BAUER, Relator, Petitioner, v. R. A. NESTOS, Governor of the State of North Dakota, SVEINBJORN JOHNSON, Attorney General of the State of North Dakota, JOSEPH KITCHEN, Commission of Agriculture and Labor, and as such constituting the Industrial Commission of the State of North Dakota, JOHN STEEN, State Treasurer of the State of North Dakota, and MARTIN S. HAGEN, Manager of the Hail Department of the State of North Dakota, and S. A. OLS-NESS, Commissioner of Insurance of the State of North Dakota, Respondents.

(187 N. W. 233)

Statutes — statutes granting specific power or imposing definite duty impliedly grant the necessary authority to execute the same.

1. Where a statute grants a specific power or imposes a definite duty, it, also, in the absence of a limitation, by implication confers authority to employ all the means that are usually employed and that are necessary to the exercise of the power conferred or to the performance of the duty imposed.

Insurance — statute authorizing negotiation of loan to state hail insurance fund held to imply power to execute its purpose.

2. In construing § 23, chap. 77, Laws 1921, which provides that "the Commissioner of Insurance, with the approval and assistance of the Industrial Commission, shall have authority to negotiate or float a loan, if found to be advisable, whereby the state hail insurance fund can pay its obligations in cash," it is *held*, that the power conferred and duty imposed upon the officers named carry by implication the power to use such proper and lawful means as in their judgment are necessary to accomplish the intended purpose.

**Insurance — state officers could not be enjoined from carrying out an authorized contract to sell warrants to provide money for the state hail insurance fund.**

    3.   In the instant case, wherein it is sought to restrain these officers and the State Treasurer from carrying out a certain contract made under the provisions of the statute above quoted, it is *held*, for reasons stated in the opinion, that the Commissioner of Insurance and   the   Industrial Commission in making such contract did not exceed the powers conferred upon them by such statute; and that the Commissioner of Insurance and the State Treasurer are not inhibited from performing any acts which they have agreed to perform under the contract.

Opinion filed Feb. 11, 1922.   Rehearing denied April 11, 1922.

Original application for a writ of injunction against the members of the State Industrial Commission, and the Commissioner of Insurance, the State Treasurer, and the Manager of the State Hail Insurance Department.

Writ denied.

*Sullivan, Hanley,* and *Sullivan,* for petitioner.

*Sveinbjorn Johnson,* Attorney General, for respondents.

It is a rule of construction which applies to general legislation in regard to those subjects in which the public at large is interested that legislative grants or public grants for such public purposes are to be liberally construed and expounded than similar provisions concerning   private grants."   Bradley v. N. Y. & N. H. Ry. Co., 21 Conn. 306; United States v. Denver etc. Ry. Co., 150 U. S. 14; 14 Sup. Ct. Rep. 11; 37 U. S. Lawyers ed. 975.

As a general rule where power is granted, it implies that any reasonable and proper means may be employed to execute it, unless specific directions are given.   25 R. C. L. 980; 28 L. R. A. 732; 2 Sutherland Stat. Const. 563; 36 Cyc. 1113.

It is the duty of the court to carry out the purpose of the legislature. When cases of doubt arise in arriving at such intent and purpose the courts will look to contemporaneous history of the evils sought to be remedied and the conditions which probably led up to and induced the enactment.   Bailey v. State, 71 N. E. 655.

A statute should be construed as a whole with to the whole system

of which it is a part.   2 Lewis' Sutherland Stat. Const. § 348.

CHRISTIANSON, J.   This is an original proceeding in this court against
the members of the State Industrial Commission (the Governor, Attor-
ney General, and the Commissioner of Agriculture and Labor), the
State Treasurer, the Insurance Commissioner, and the manager of the
State Hail Insurance Department, to enjoin them from carrying out a
certain contract between the Industrial Commission and the Minnesota
Loan & Trust Company and Lane, Piper & Jaffray, Inc., relating to the
sale of certain warrants issued by the State Hail Insurance Department.
The jurisdiction of the court has not been challenged.   The Attorney
General of the state, who appears as one of the respondents, as well as
attorney for all the respondents, while denying the merits of the cause,
joins in the application that this court assume original jurisdiction.   On
the return day the respondents interposed a general demurrer to the
petition of the relator, so the question before this court is whether the
petition sets forth a cause of action, and entitles the plaintiff to any
relief.

In order to intelligently consider the questions raised by the relator,
it is essential to allude to the laws of this state establishing and provid-
ing for the operation of the State Hail Insurance Department.   By con-
stitutional amendment adopted at the general election held in November,
1918, the Legislature was authorized to levy a tax for the purpose of
indemnifying the owners of crops against damage by hail.   See article
24, Amendments to State Constitution.   See, also, article 30 of   such
Amendments.   Pursuant to the constitutional authority so granted, the
legislative assembly in 1919 enacted a law, commonly known as the State
Hail Insurance Act, establishing the State Hail Insurance Department,
and providing for the operation thereof.   Chap. 160, Laws 1919.   The
department was established in the office, and placed under the manage-
ment, supervision, and control of the Commissioner of Insurance.   Id.
§ 2.

The act provided that—

"All moneys collected under the provisions of this act shall be de-
posited with the State Treasurer and shall be kept in a separate fund to
be designated 'state hail insurance fund.'"   Id. § 23.

The act further provided:

"Whenever the Commissioner of Insurance shall furnish to the State

Auditor a certified list giving the losses sustained, together with the names and addresses, and a written acceptance of the amount allowed any claimant under the provisions of this act, it shall be the duty of the State Auditor with the consent and approval of the Governor, in anticipation of the payment of the taxes provided therefor, to draw warrants upon the State Treasurer for said amounts in favor of such persons, which amounts shall be charged to the state hail insurance fund. Such warrants to be mailed to the persons entitled thereto as shown by the certified list of the Commissioner of Insurance. All such warrants to be paid from the state hail insurance fund, and shall draw interest from date of issue at the rate of six per cent. per annum until due and payable. Such warrants shall become due and payable on the call of the State Treasurer." Id. § 21

The Hail Insurance Act carried an emergency clause, and became effective March 1, 1919. In 1921 the statute was re-enacted with certain amendments. Chap. 77, Laws 1921. Among other changes made in the law was one providing for a manager of the department. Section 23 of the act relating to the hail insurance fund was amended by adding thereto, among others, the following provision:

"Provided, that the Commissioner of Insurance, with the approval and assistance of the Industrial Commission, shall have the authority to negotiate or float a loan, if found to be advisable, whereby the state hail insurance fund could pay its obligations in cash upon certification of the Commissioner of Insurance to the State Auditor as provided in § 21 of this act." Chap. 77, Laws 1921, § 23.

It is obvious that the legislature had a purpose in view in adding this provision. Under the original act the warrants drawn could be paid only when the taxes levied had been collected. And it is a matter of common knowledge that many of the hail warrants issued during the years 1919 and 1920 were not paid for some period of time, and that many of the holders of such warrants, in order to obtain cash, were required to discount them at high rates. It was doubtless this condition that the legislature sought to remedy when it authorized the Commissioner of Insurance, with the approval and assistance of the Industrial Commission, to obtain a loan to pay the obligations of the hail insurance department. The contract, the performance of which it is sought to have enjoined by this proceeding, is one purporting to have been made by the Commissioner of Insurance by and with approval and assistance of the

Industrial Commission under the provision of law last quoted. In general the plan or arrangement as provided in the contract is as follows: The Minnesota Loan & Trust Company, Lane, Piper & Jaffray, Inc., agree to purchase any and all warrants issued for 1921 hail losses that may be offered to them by any person at the following rates: All warrants offered and purchased during February, 1922, at 98 per cent., during March, 1922, at 98½ per cent., during April, 1922, at 99 per cent., during May, 1922, at 99½ per cent., and during June, 1922, at 100 per cent. of the principal or face amount of such warrants. The Industrial Commission agrees to repurchase from the Minnesota Loan & Trust Company and Lane, Piper & Jaffray, Inc., at par and accrued interest, all hail warrants which they have so purchased from the holders thereof, and to issue in payment thereof the notes of the Industrial Commission dated December 1, 1921, and bearing interest at the rate of 6 per cent. per annum from the date thereof. Such notes to be issued in denomination of $1,000, and to mature as follows: 20 per cent. thereof on December 1, 1922; 25 per cent. thereof on February 1, 1923; 20 per cent. thereof on April 1, 1923; and 35 per cent. thereof on June 1, 1923. The avowed purpose of the arrangement is to enable the holders of hail warrants to realize thereon in cash the amounts which the Minnesota Loan & Trust Company and Lane, Piper & Jaffray, Inc., have agreed to purchase them for. The contract also provides that the hail warrants so repurchased by the Industrial Commission from the Minnesota Loan & Trust Company and Lane, Piper & Jaffray, Inc., shall be deposited with the State Treasurer and by him held in trust as collateral security for the payment of the notes. And the State Treasurer agrees to certify on the back of each note that hail warrants aggregating in principal amount the amount of such notes and all similar notes outstanding have been deposited with and are held by him as collateral security for the payment of such note and all other notes, and that such warrants are payable from the hail insurance fund, into which fund are paid all proceeds from the flat acreage tax on all tillable lands in the state of North Dakota, and the special indemnity tax levied pursuant to the provisions of law relating to hail insurance. It is also provided that the Insurance Commissioner shall, and he agrees to, certify upon the back of each note as to the amount of hail insurance taxes levied for the year 1921 for the purpose of paying the obligations against the hail insurance fund. The contract further provides that, before the Minnesota Loan & Trust Company and Lane, Piper & Jaffray, Inc., shall be required to purchase war-

rants drawn on the hail insurance fund from the present holders thereof, the Commissioner of Insurance shall furnish a certificate that such warrants represent valid obligations upon the hail insurance fund, and that the State Treasurer shall furnish a certificate that the indorsements on the several warrants are in due form. The contract also provides that the State Treasurer shall, as far as practicable, call for payment and pay all other warrants drawn against the state hail insurance fund before he calls any of the warrants deposited with him as trustee.

It is contended by the petitioner that this contract is invalid for the reasons:

"(1) That the Industrial Commission and the Insurance Commissioner have no authority to purchase any of the hail warrants.

"(2) That they have no authority to execute or deliver any of the notes, etc., described in the petition.

"(3) That they have no authority to pay the notes, and that there is no fund out of which principal or interest of the said notes may be paid.

"(4) That they have no authority to contract with the company to deposit such warrants as collateral security with the State Treasurer.

"(5) That the State Treasurer has no authority under the law to become party to the contract, to indorse a statement upon the back of the notes as recited in the contract and as appears in the petition; also that the Commissioner of Insurance has no authority to certify to the validity of warrants.

"(6) That the State Treasurer has no authority to certify to the regularity of the indorsements of any of the warrants, or accept the warrants and hold the same as collateral to the notes, or to certify to the said notes as provided in the contract, or to pay principal or interest on any of said warrants so deposited with him, or to pay hail insurance warrants in the order provided in said contract, or to apply the proceeds of said warrants so deposited with him in payment of principal or interest of said notes.

"(7) It is further contended that the State Treasurer has no authority to pay, the Insurance Commissioner no authority to agree to authorize the payment, and the Industrial Commission no authority to contract and agree to pay out of the hail insurance fund such difference, if any, as may exist in interest between the dates the hail warrants are called for payment by the Treasurer when interest stops and the dates when

the notes made as provided in the contract mature and may be paid.

"(8)    It is further contended that the warrants are not valid obligations of the hail fund, nor are the notes such obligations of the Industrial Commission or the hail fund or any officer of the state whatsoever."

In our opinion the contentions advanced by the relator cannot be sustained.    The legislature specifically authorized the Commissioner of Insurance and the Industrial Commission, if and when they find it advisable so to do, to make a loan for the purpose of paying the outstanding obligations for hail losses.    The Industrial Commission was created by the legislature in 1919 for the purpose of conducting and managing, on behalf of the state of North Dakota, "certain utilities, industries, enterprises, and business projects," which had been or might thereafter be established by law.    Chap. 151, Laws 1919.    The Industrial Commission was placed in control of the bank of North Dakota, the  North Dakota Mill & Elevator Association, and the Home Building Association.    Chaps. 147, 150—154, Laws 1919.    See, also, Green v. Frazier, 253 U. S. 233, 40 Sup. Ct. 499, 64 L. ed. 878.    The members of the Industrial Commission were "empowered and directed to manage, operate, control and govern all utilities, industries, enterprises and business projects," then or thereafter "established, owned, undertaken, administered or operated by the state of North Dakota, except those carried on in penal, charitable or educational institutions" (Laws 1919, chap. 151, § 5), and was given exceedingly broad powers in discharging the duties imposed upon it.    See chap. 151, Laws 1919.

It will be noted that, while the legislature authorized the Commissioner of Insurance and the Industrial Commission to make a loan for the purpose of paying obligations for hail losses, no provision was made as to the manner in which the power so granted should be exercised.    It does not follow, however, as contended by the relator, that these officers are precluded from exercising the power conferred and performing the duty imposed upon them because the legislature failed to prescribe the particular mode in which such power should be exercised and the duty performed.    An express statutory grant of power on the imposition of a definite duty carries with it by implication, in the absence of a limitation, authority to employ all the means that are usually employed and that are necessary to the exercise of the power or the performance of the duty.    25 R. C. L. pp. 979, 980; 36 Cyc. 1113; 2 Lewis' Sutherland, Stat. Const. 563; Newcomb v. Indianapolis, 141 Ind. 451, 40 N. E. 919,

28 L. R. A. 732; Fuller v. Board of University and School Lands, 21 N. D. 212, 129 N. W. 1029. That which is clearly implied is as much a part of a law as that which is expressed. And, in our opinion, the authority conferred upon the Commissioner of Insurance and the Industrial Commission to negotiate or float a loan, if and when they find it desirable to do so, carries with it by implication the power to use such proper and lawful means as in their judgment are necessary to accomplish the intended purpose. Of course, it is not contended that, in making a loan to pay obligations against the hail insurance fund, the Commissioner of Insurance and the Industrial Commission have any authority to pledge the credit of the state of North Dakota; and there has been no attempt to do so. The notes to be issued will in reality be obligations against the hail insurance fund, and they will be paid with moneys realized from taxes levied and collected under the provisions of the Hail Insurance Act. See First National Bank of Halstad, Minn., v. Olsness et al. ante, 186 N. W. 751. What has been said disposes of the first three contentions advanced by the relator.

The fourth contention, namely, that there is no authority to contract that the warrants shall be deposited with the State Treasurer, and by him held in trust as collateral security for the payment of the notes is also practically disposed of by what has been said in considering the first three objections. Inasmuch as the officers have authority to "negotiate and float a loan," they unquestionably have power to issue instruments evidencing the indebtedness incurred. And we see no reason why they may not contract with the lender that collateral pledged as security for the payment of the loan shall be deposited with some suitable depositary. No provision of law has been pointed out, and none has been found, which inhibits the State Treasurer from acting as such depositary. The State Treasurer has heretofore been designated by the legislature as custodian of a fund to be accumulated and disbursed under an optional Hail Insurance Act (see State ex rel. Olson v. Jorgenson, 29 N. D. 173, 150 N. W. 565) and also as custodian of a fund provided for the bonding of municipal officers (see State ex rel. Linde v. Taylor, 33 N. D. 76, 109, 156 N. W. 561, L. R. A. 1918B, 156, Ann. Cas. 1918A, 583). Inasmuch as the State Treasurer has signified his willingness to act as a depositary of the hail warrants to be pledged as collateral security for the payment of the notes to be issued by the Industrial Commission, and as there is nothing in the constitution or statutes of this state inhibiting

him from so doing, we are entirely agreed that the relator has not, nor has any other person, any cause to complain.

Nor do we think there is any merit in the fifth and sixth objections. Before the state treasurer pays any warrant drawn on the hail insurance fund he must examine the warrant and satisfy himself, not only that the warrant is a genuine one, but also that any indorsement thereon is in due form. This is a duty imposed upon him by law. Hence the contract merely requires him to perform that duty, and provides that he shall make a certificate showing that the duty has been performed.

Nor do we see any legal objection to the certification by the State Treasurer as to the amount of hail warrants which he has received and is holding as collateral security for the notes, or to the certification by the Commissioner of Insurance as to the amount of hail insurance taxes levied for the year 1921 for the purpose of paying claims against the hail insurance fund. Certainly there is no reason why a depositary may not make a certificate as to what has been deposited with him or it. Nor is there any reason why a public officer may not make a certificate or an affidavit showing the facts regarding a matter connected with his office, or ascertainable from the records therein.

Nor do we see any legal objection to the certification by the Commissioner of Insurance that certain hail warrants are valid obligations against the hail insurance fund. Among the duties imposed upon the Commissioner of Insurance by the Hail Insurance Act are to ascertain the amount of losses adjusted and approved, and to certify to the State Auditor the amount of losses sustained, together with the names and addresses of the parties who are entitled to be compensated for such losses. The State Auditor is required to issue warrants to the persons named for the respective amounts stated in the list so certified by the Commissioner of Insurance. The duty of the Commissioner of Insurance is terminated when he has certified the losses to the State Auditor; but, if he is willing to compare the warrants issued by the State Auditor with the list of losses adjusted and approved so as to satisfy himself that the different warrants so examined have in fact been issued to the proper persons and in the proper amounts, there is clearly no legal objection to his doing so. Nor is there any good reason why he may not make a certificate stating that this has been done.

The seventh and eighth objections raised by the relator are fully answered by what was said in considering the first three.

We have carefully examined the contract involved in this controversy, and are unable to find wherein the Commissioner of Insurance or the Industrial Commission have exceeded the powers conferred upon them, or wherein the Commissioner of Insurance or the State Treasurer have agreed to perform any act which they are inhibited from performing.

It follows that the application of the relator must be, and the same hereby is, denied.


BIRDZELL and BRONSON, JJ., concur.


ROBINSON, J., concurs in result.


GRACE, C. J, did not participate.


*On Rehearing Filed April* 11, 1922


PER CURIAM. Plaintiff has filed a petition for rehearing wherein it is asserted that the court in rendering its decision herein failed to consider the fact that the contract involved is predicated on "the theory that the insurance fund is indivisible; that into said fund is paid the special indemnity tax and the flat acreage tax for various years; that when said taxes are paid into said fund there is no distinction between taxes levied for one year and taxes levied for another year; no distinction between the indemnity tax and the flat acreage tax of one year and the indemnity tax and the flat acreage tax levied for another year." That "as a matter of fact, the defendants are by the proceeding of which we complain in the complaint treating the hail insurance fund as an indivisible fund into which are paid all taxes levied pursuant to chap. 160 of the Laws of 1919, as amended by chap. 77 of the Laws of 1921, and are proceeding upon the theory that said taxes when paid into said fund lose their identity as taxes levied for any particular year, and become merely a general asset of the fund; that all taxes so paid into said fund are to be used, insofar as available after paying the expenses of the hail insurance department, in paying hail insurance warrants in the order in which they are registered; that is, that all 1921 warrants must be paid prior to the payment of the 1922 warrants, regardless of the fact that some of the funds used to pay said 1921 warrants may be proceeds of the indemnity

tax or the flat acreage tax levied for the year 1922, under chap. 77 of the Laws of 1921, or a portion of said funds may be obtained from the collection of delinquent hail insurance tax for 1920 or 1919, under chap. 160 of the Laws of 1919."

In our opinion these questions were fully determined in our former decision in this case, and by the decision in First National Bank of Halstead, Minn., v. Olsness, et al., ante, 186 N. W. 751. The statute (§ 21, chap. 77, Laws 1921) makes it the duty of the State Auditor to draw warrants upon the State Treasurer, for the amount of losses, and, in favor of the persons entitled to be compensated therefor, as certified by the commissioner of insurance; and to charge the amounts of the warrants so drawn to the state hail insurance fund. The statute further provides: "All such warrants shall be paid from the State Hail Insurance Fund and shall draw interest from the first day of December at the rate of six per cent. per annum until due and payable. *Such warrants shall become due and payable on the call of the State Treasurer.* It shall be the duty of the State Treasurer at least one each month to call such warrants to the amount of collections remitted to him by the various county treasurers during the preceding month. Provided, however, that a sufficient amount shall at all times be retained in the State Hail Insurance Fund to meet the current expenses of the State Hail Insurance Department as certified by the Commissioner of Insurance." (§ 21, chap. 77, Laws 1921). These provisions speak for themselves, and evidence, we think, an unmistakable intention on the part of the legislature that all moneys received from taxes levied for hail insurance purposes, whether they consist of proceeds of flat acreage taxes or of indemnity taxes; whether they consist of taxes for the current year or of delinquent taxes for previous years, shall all be paid into one fund, viz: the State Hail Insurance Fund; and that all warrants drawn on such fund are when and as called for payment by the State Treasurer properly payable out of any moneys in such fund without regard to the particular tax from which they were derived. A rehearing is denied.

CHRISTIANSON, BIRDZELL, ROBINSON, and BRONSON, JJ., concur.

GRACE, Ch. J., did not participate.