R. GOER, S. E. Ellsworth and C. J. Fisk, Individually and as Members of the State Bar Board of North Dakota, Appellants, v. E. J. TAYLOR, the State Law Librarian, J. H. Newton, Clerk of the Supreme Court, D. C. Poindexter, State Auditor, and John Steen, State Treasurer, of the State of North Dakota, Respondents.

(200 N. W. 898.)

**Attorney and client — license prescribed by state bar board act is regulatory exaction.**

1. Chapter 69 of the Laws of 1919, known as the State Bar Board Act,

---

Note.—(4) Interest essential in raising constitutional question, see 6 R. C. L. 89; 2 R. C. L. Supp. 21; 4 R. C. L. Supp. 379; 5 R. C. L. Supp. 318.

(5) Avoidance of unnecessary decision on constitutionality of statute, see 6 R. C. L. 77; 2 R. C. L. Supp. 17; 4 R. C. L. Supp. pp. 377, 378; 5 R. C. L. Supp. 317.

is a regulatory measure, and the license fee therein prescribed is a regulatory exaction.

**Constitutional law — licensees under regulatory statute cannot challenge constitutionality of enactment disposing of resulting funds.**

2. The licensees, under a regulatory statute, have not, as mere licensees, such an interest in the fund resulting from the license fees thereunder exacted as will clothe them with the right to challenge the constitutionality of an enactment disposing of such fund.

**Constitutional law — State Bar Board cannot challenge constitutionality of act disposing of excess funds created thereby.**

3. The State Bar Board, appointed under the provisions of chapter 69, Laws of 1919, as a board has not such an interest in the funds resulting from the exactions imposed by said chapter 69 as will clothe it with the right to challenge the constitutionality of an act disposing of the excess of such funds above the cost of carrying out the regulatory provisions thereof.

**Constitutional law — parties whose rights are not affected may not challenge constitutionality of legislative enactment.**

4. A party whose rights it does not affect may not challenge the constitutionality of a legislative enactment.

**Constitutional law — constitutionality of statute will not be passed on, if cause can be disposed of on other grounds.**

5. "Where a constitutional question is raised, though it may be legitimately presented by the record, yet if the record also presents some other and clear ground upon which the court may rest its judgment, and therefore, render the constitutional question immaterial to the case, that course will be adopted, and the question of constitutional power will be left for a consideration until a case arises which cannot be disposed of without considering it, and when consequently, a decision upon such question will be unavoidable."

Opinion filed June 4, 1924. Rehearing denied November 25, 1924.

Attorney and Client, 6 C. J. § 15 p. 571 n. 57. Constitutional Law, 12 C. J. § 177 p. 760 n. 57; § 181 p. 764 n. 82; § 183 p. 765 n. 94; § 212 p. 782 n. 99.

Appeal from the District Court of Burleigh County, *Jansonius, J.* Affirmed.

*Knauf & Knauf,* for appellants.

The State Courts are created by and derive their jurisdiction from the State Constitution and cannot assume jurisdiction not granted, nor which is denied though the effect may be that the object of a contract be enforced. McNealy v. Gregory, 13 Fla. 417; Reneber v. Anderson,

93 N. C. 105; Withers v. Paterson, 86 Am. Dec. 643; Cowan v. Nickerson, 28 Tex. 230; Messen v. Gidding, 65 Tex. 301.

The Constitution is a superior unchangeable rule of action and governs the legislatures as well as courts, executives, and it shall not be altered by acts pleasing to the passing whims of legislative assemblies. Marbury v. Madison, 1 Cranch, 137, 2 L. ed. 60.

*Geo. F. Shafer,* Attorney General, and *John Thorpe,* Assistant Attorney General, for respondents.

For it is a fundamental rule of constitutional law that every presumption is in favor of the constitutionality of a statute enacted by a legislature. And this presumption becomes conclusive unless it is clearly shown that the enactment is prohibited by the state or Federal Constitution. State ex rel. Linde v. Taylor, 33 N. D. 76, 156 N. W. 564.

A statute is not to be held a violation of the fundamental charter established by the people in their Constitution, unless so clearly outside the power conferred upon the legislature as to be free from reasonable doubt in that regard. State ex rel. Langer v. Crawford, 36 N. D. 404.

To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone, would not only be unreasonable but would actually render legislation impossible. Cooley, Const. Lim. 5th ed. p. 173.

There has been a general disposition to construe the provisions liberally rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the lawful purpose for which it was adopted. Cooley, Const. Lim. 5th ed. p. 176.

The entire statutory law upon one general subject may be incorporated in a single act. Pioneer Irrig. Dist. v. Bradberry, 68 Pac. 295, 8 Idaho, 310, 101 Am. St. Rep. 201.

The constitutional provision as to statutory title should be liberally construed, and if matters claiming to constitute two subjects are connected with each other and are germane to the primary object of the statute, the act containing them is not invalid. Foraker v. White, 7 Boyce, 725, 102 Atl. 186.

The authority in the government which possesses the power to create

an office has . . . the implied power to abolish the office it has created. 29 Cyc. 368.

It has been held by the highest court in the land that no person has or acquires any vested interest or right in an office of which the legislative department may not deprive him unless legislative action is prohibited by an express constitutional restriction. State ex rel. Langer v. Crawford, 36 N. D. 385; Crenshaw v. United States, 134 U. S. 99, 33 L. ed. 825; Taylor v. Beckham, 178 U. S. 577, 44 L. ed. 1200.

When an office is created by statute, it is wholly within the control of the Legislature. The term, the mode of appointment, and the compensation may be altered at pleasure and the latter may be even taken away without abolishing the office. Cooley, Const. Lim. 6th ed. 331.

NUESSLE, J. Chapter 69 of the Laws of 1919, known as the State Bar Board Act, amended certain sections of the Compiled Laws of 1913 relating to the admission to practice and regulation of attorneys-at-law within the state of North Dakota, and created a board known as the State Bar Board. The act provided for the appointment of the board by the governor, fixed the term of office of the members thereof, prescribed their duties, provided for their compensation, and at § 9 thereof amended § 811 of the Compiled Laws of North Dakota for the year 1913 to read as follows:

"No person shall be entitled to practice law or act as attorney or counsellor at law in this State unless such person shall first secure a certificate of admission to the Bar. In addition to the fee provided for securing such certificate, he shall pay the Clerk of the Supreme Court an annual license fee of $15.00. The said Clerk of the Supreme Court shall, in his ex-officio capacity as treasurer of such State Bar Board, deposit such license fee with the State Treasurer, to be kept in a fund known as the State Bar Fund, to be disbursed therefrom only in the manner hereinbefore provided to defray the expenses of the State Bar Board. . . ."

At the 1923 regular session, the legislature enacted and the Governor subsequently approved chapter 134, Session Laws, 1923, amending chapter 69, Session Laws, 1919. The 1923 act abolished the old bar board and provided for the creation of a new board to be appointed by the Supreme Court and re-enacted the remainder of the 1919 act in

substantially its original form, excepting that by § 9 of the 1923 act § 811, Comp. Laws, 1913, as amended by chapter 69, Session Laws, 1919, was amended to read as follows:

"No person shall be entitled to practice law or act as attorney or counsellor at law in this state unless such person shall first secure a certificate of admission to the bar. Such certificate shall be issued upon payment of the fee provided therefor, and in addition thereto, the further payment of the annual license fee of *ten dollars. From the moneys heretofore accumulated and now on hand in the State Bar Fund, there is hereby appropriated the sum of $10,000 to be expended under the direction of the Supreme Court for purchase and repair of books in the State Law Library.* The Clerk of the Supreme Court shall, in his ex officio capacity, as the Treasurer of said Bar Board, deposit all license fees with the State Treasurer to be by him kept in a fund known as the State Bar Fund, the same to be disbursed therefrom only in the manner herein provided. . . ."

The plaintiffs, R. Goer, S. E. Ellsworth and C. J. Fisk were appointed members of the State Bar Board under the provisions of chapter 69, Session Laws, 1919. They constituted the State Bar Board at the time of the initiation of this action. The defendants are E. J. Taylor, Supreme Court Reporter and State Law Librarian; J. H. Newton, Clerk of the Supreme Court; D. C. Poindexter, State Auditor; and John Steen, State Treasurer, of the State of North Dakota.

Chapter 134, Session Laws, 1923, went into effect July first, 1923. In May, 1923 the plaintiffs began this action bringing the same as individuals and as the State Bar Board. In their complaint they alleged that they were appointed as members of and were qualified and acting as the State Bar Board; that the defendants held the respective official positions as hereinbefore set out; that unless enjoined from so doing, defendants would purchase and repair law books for and in the state law library, and pay therefor from the State Bar Fund, under the terms of chapter 134, Session Laws, 1923; that the plaintiffs individually have paid and contributed the license fee of $15.00 annually to the said bar fund since the enactment of chapter 69, supra, and therefore, have a personal interest in such fund to the extent of such contributions; that, as the State Bar Board, they are concerned with the performance of the duties of such board and the payment

of the bills incurred thereby; that as such they are the trustees of the said state bar fund; and that, therefore, officially and as a board, they have an interest in and are concerned on account of the said bar fund; that chapter 134, Session Laws, 1923, is unconstitutional and void by reason of the fact that it contravenes various provisions of the Constitution of the State of North Dakota, and the plaintiffs pray:

"(1) A declaratory judgment from this Court, declaring that the funds aforesaid cannot and shall not be impressed with or to other purposes than those expressed in the said Act, chapter 69 of Session Laws of North Dakota, 1919.

"(2) That the said Act, Senate Bill, No. 284 (chap. 134, Session Laws, 1923), passed by the Legislative Assembly of North Dakota for the year 1923, be declared null and void for the reasons and on the grounds hereinbefore set out, and that this Court issue its declaratory judgment under the enactment of the North Dakota Legislature, being House Bill No. 210, passed and approved by the 1923 Legislative Assembly of North Dakota, and that said enactment be declared of no force or effect and as unconstitutional under §§ 61, 62 and 282 (182) of the Constitution of North Dakota.

"The Plaintiffs further pray that the Defendants, and each of them, severally and jointly, be forever restrained and forbidden to use any of said funds, aforesaid, under the § 9 of the Senate Bill, No. 284, being in lieu of § "811" of the 1913 Compiled Laws of North Dakota, for the purpose of purchasing or repairing State Law Library Books, and that the whole of said Senate Bill, No. 284, be set aside as null and void for the reasons hereinbefore set forth, and for such other and further relief as to this Honorable Court may seem meet, proper, and just in the premises, and for costs and disbursements."

The attorney general, appearing for the defendants, interposed a demurrer to the complaint on the ground:

"1. That the Court has no jurisdiction of the subject of the action.

"2. That the Plaintiffs and the Petitioners have not legal capacity to sue.

"3. That there is a defect of parties defendant, in this that the Supreme Court of North Dakota has not been made a party defendant.

"4. That the petition and complaint does not state facts sufficient to constitute a cause of action."

The matter came on to be heard before the district court of Burleigh County, and the demurrer so interposed was sustained. The case is now here on appeal from the order sustaining such demurrer.

The demurrer interposed by the attorney general challenges the right of the plaintiffs or either of them to maintain the action, and further challenges the sufficiency of the allegations of the complaint to warrant the court in awarding any relief. It appears to us that the first question which presents itself in the consideration of the propositions which are raised in this case is the question of the character of the license fee imposed by the Bar Board Act and the fund resulting therefrom. It will be noted, first, that there is no question here raised as to the constitutionality of the act insofar as it provides for the imposition of an annual license fee as a prerequisite to the right of an attorney to practice in the courts of record of this state. In any event, we think it is clear that the legislature has the right to impose a proper occupational charge. Such charge may be imposed either for the purpose of producing revenue, in which case, as a tax, it is subject to the requirements of § 175 of the Constitution (see State v. Kleetzen, 8 N. D. 286, 78 N. W. 984, 11 Am. Crim. Rep. 324), or as a purely regulatory exaction. If imposed for the latter purpose it is subject only to the requirements that the regulatory provisions be reasonable and that the charge or fee be not to any considerable extent greater in amount than is reasonably necessary to carry out the regulatory provisions. See State v. Kleetzen, supra; Bartles Northern Oil Co. v. Jackman, 29 N. D. 236, 150 N. W. 576; State ex rel. Gaulke v. Turner, 37 N. D. 635, 653, 164 N. W. 925; Cooley, Taxn. 3d ed. p. 1141. And since expenditures on account of regulatory provisions in a legislative act must be made subsequent to the enactment, the requirements can only be estimated or approximated, and more or less latitude will be allowed in determining whether such regulatory charge or license fee is reasonable. And the presumption is that it is reasonable. State ex rel. Gaulke v. Turner, 37 N. D. 635, 653, 164 N. W. 925; Minneota v. Martin, 124 Minn. 498, 51 L.R.A.(N.S.) 40, 145 N. W. 383, Ann. Cas. 1915B, 812; Sperry & H. Co. v. Melton, 69 W. Va. 124, 34 L.R.A.(N.S.) 433, 71 S. E. 19; Cooley, Taxn. 3d ed. p. 1142 et seq.; 17 R. C. L. 537. And if there is an excess above the actual cost of carrying out the regulatory

provisions, the licensees cannot recover the difference between the amount exacted and such cost. Atlantic & P. Teleg. Co. v. Philadelphia, 190 U. S. 160, 47 L. ed. 995, 23 Sup. Ct. Rep. 817; Postal Teleg. & Cable Co. v. Taylor, 192 U. S. 64, 48 L. ed. 342, 24 Sup. Ct. Rep. 208.

An examination of the provisions of the Bar Board Act discloses beyond any doubt that it is a regulatory act. It provides for the appointment of the bar board and prescribes the duties of that board with reference to the bar of the state. It provides for the board's passing upon the qualifications of the candidates for admission to the bar; and for the investigation by the board of any charge relative to misconduct on the part of any member of the bar when such matter shall have been referred to the board by the Supreme Court. It provides for the prosecution at the order and direction of the Supreme Court of proceedings for disbarment, suspension or other discipline of any member of the bar on account of accusations made; and provides for the annual licensing by the board of practitioners at the bar. The act further provides with reference to the moneys paid on account of such licenses that the same shall be paid to the clerk of the Supreme Court in his ex-officio capacity as the treasurer of the bar board to be deposited by him with the state treasurer to be kept in a fund known as the State Bar Fund. Otherwise than in section 9 of the acts heretofore quoted neither the 1919 act nor the 1923 act states the object of the imposition of the license fee or the purposes to which the moneys obtained therefrom shall be applied, or otherwise provide for the disposition of the same, excepting that the fourth sections of the respective acts. being amendments of § 787, Comp. Laws, 1913, provides for the compensation of the members of the bar board and the payment of their personal expenses and such expenses as might otherwise be incurred in carrying on and performing their duties as such bar board, the 1919 act providing that "such expenditures shall all remain within the sums derived from the fees paid to said State Bar Board. All claims for such salaries, fees and expenses of such Board shall be submitted to the Auditing Board of this State on sworn vouchers as now required by law, and shall be paid by the treasurer of the State Bar Board out of the state bar fund," and the 1923 act providing that "such expenditures shall all remain within the sums derived from the fees paid to said State Bar Board.

All claims for such compensation, fees and expenses of such Board shall be submitted to the Auditing Board of this state on sworn vouchers as now required by law, and shall be paid by the treasurer of the state out of the State Bar Fund." So it is beyond question, considering the act in all its various aspects that it is a regulatory measure, and the license fee imposed is a purely regulatory exaction.

The apparent theory of the complaint in this case in so far as it touches the right of the plaintiffs individually to maintain the action, is that they have a particular interest in the Bar Board Fund distinct from any other individual or class of individuals in the state who may not have contributed thereto; that by reason of such peculiar personal interest they are entitled to be heard as to the disposition that might be made by the legislature of any moneys accumulated in such fund. It must be remembered that it does not appear that any of the contributions to such fund in the way of license fees paid by these individual members were paid involuntarily or under protest. So far as appears, any payments they may have made were voluntary payments. That being the case, the moment that such payments were made, they as individual contributors ceased to have any right in or to such moneys as may have been so paid by them. Thereafter their interest in such funds and the expenditure thereof was at most identical with the interest of every taxpayer in the state of North Dakota. But they do not assert any right to be heard in complaint as to the expenditure and disposition of such funds as taxpayers. They predicate their individual right to be heard as attorneys who have as such participated in the creation of a trust fund.

It is further asserted that even though the complaint does not disclose any right in the plaintiffs as individuals to maintain the action, nevertheless it does disclose such right in them as a board; that, as the State Bar Board, they are the custodians and trustees of this State Bar Fund, charged with the supervision of the same, and thereby, as a board, have a particular and special interest in the funds therein. The act, as we have heretofore shown, gives the board no control over the fund. They are not its custodians. Surely there is no possibility that the board may be held liable if such funds be disbursed by the state treasurer in accordance with the mandate of the legislature as expressed in the act. While the license fees may be said to be paid to such board,

they are in fact paid to the clerk of the Supreme Court, the ex-officio treasurer of the board, and deposited by him with the state treasurer. The board is clothed with no authority to disburse such funds. It is true that the compensation of the members of the board and the expenses necessarily incident to the performance of their duties are to be paid therefrom. But by whom and how? Section 4 of the 1919 act, amending § 787, Comp. Laws 1913, provides: "All claims for such salaries, fees and expenses of such board shall be submitted to the Auditing Board of this state on a sworn voucher, as now required by law, and shall be paid by the treasurer of the State Bar Board out of the State Bar Fund." Further than this, the board had and has nothing to do with and no interest in the moneys in such fund. It has no different or greater interest therein or control thereof than has any person who might in the future have a claim against the fund for services rendered in carrying out the provisions of the law. The act is wholly silent as to what shall be done with any balance that may remain in the fund at the expiration of any annual licensing period or in case the board shall be abolished. We think there is no question but that the legislature in the first instance might properly have provided that any surplus remaining unexpended after carrying out the provisions of the act should be covered into the general fund of the state, or have made such other provision for the disposition of any resulting surplus as it saw fit; and likewise we think there is no question but that the legislature had and has the power at any time to wholly abolish the board or to make any changes that it sees fit with reference to its membership, their terms of office or compensation. See Cooley, Const. Lim. 7th ed. p. 388 and cases cited at note 2; State ex rel. Langer v. Crawford, 36 N. D. 385, 407, 162 N. W. 719, Ann. Cas. 1917E, 955, and authorities cited. And since the individual contributors who paid voluntarily have no personal and individual interest in the fund, the conclusion is irresistible that the disposition of any unexpended balance remains wholly with the legislature which created it, and which unquestionably possesses the right to abolish the board or change its membership. Having the power to abolish the board at any time, it likewise must have the power to determine and say when the purposes for which it was created have been accomplished. The fund is not analogous to a sinking fund, a special assessment fund or to any other tax fund

51 N. D.—51.

created for a particular purpose which has not been accomplished or discharged. Thus the case is wholly different from the cases of Red River Valley Nat. Bank v. Fargo, 14 N. D. 88, 103 N. W. 390, and State ex rel. Viking Twp. v. Mikkelson, 24 N. D. 175, 139 N. W. 525, cited and relied on by the appellants.

It is plain upon a reading of § 811, supra, as amended, that in 1923 the legislature was of the opinion that the license fee of $15.00 first imposed resulted in a greater fund than was necessary to carry out the regulatory provisions of the act, and that in legislative contemplation an excess resulted which was not needed to accomplish those purposes. Therefore, the legislature, acting within a field exclusive to it and exercising the judgment which it had the right and which it was its duty to exercise, reduced the license fee to $10.00 and sought to dispose of the unused surplus theretofore accumulated. This same legislative intent was evidenced by the enactment of chapter 25, Laws 1921, creating the State Bar Association and providing for the payment of its expenses from the State Bar Fund in an amount not to exceed $3.00 per member annually. Said chapter 25, by § 3 thereof, provides:

"That such sum of money or any part thereof, shall be paid only upon vouchers drawn by the President and Secretary of the Bar Association duly submitted as required by law showing the expenses of making, printing and distributing the reports of its annual and special meetings and expenses of the association in connection therewith."

And again, evidence such intention, chapter 25 was amended by chapter 133, Laws 1923, which increased the amount payable to the State Bar Association from $3.00 to $5.00 per member. Both of these enactments plainly indicate that in the judgment of the legislature the requirements of the Bar Board Act were less than the revenues resulting from the fees imposed by the respective acts, and a reduction was therefore necessary and thus made. It may be that if it should appear that the Bar Board required such surplus so disposed of or any part of the same in order to discharge obligations already incurred under the act that the board might have such an interest in the fund as would warrant it in bringing the action. But it does not appear from the complaint, nor is any contention made, that such unexpended balance or any part of it is thus necessary for the board. Nor does it appear,

nor is such contention made, that the reduced license fee of $10.00, taking into consideration the payments therefrom to the State Bar Association, will not result in the production of such an amount as will be necessary for the future purposes of the board.

To recapitulate: The Bar Board Act is regulatory. The license fee imposed thereby is a regulatory exaction. The money in the fund, the subject of the legislative action which is sought to be challenged by the plaintiffs in this suit, is an accumulated excess resulting from the license fees above the amount required to carry out the regulatory provisions. The plaintiffs, having voluntarily paid their license fees as individuals, have no interest in such excess peculiar to them alone. They are not seeking relief as taxpayers. As a board, they are not the custodians or trustees of the fund; as such, they are not financially responsible for any disbursements that may be made therefrom by legislative authority. The accumulated surplus in the fund is not necessary or required in order to discharge obligations heretofore incurred or to enable the board to perform the duties prescribed by the act or to compensate the members thereof.

The above conclusions being warranted, we think that the plaintiffs have not shown themselves to be clothed with the right to invoke injunctive relief. The plaintiffs attack the act in question on the ground that it is unconstitutional. They ask the court to declare it void for the reason that the legislature has disregarded constitutional restraints. "A court will not listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who has, therefore, no interest in defeating it." Cooley, Const. Lim. 7th ed. p. 232; Mohall Farmers' Elevator Co. v. Hall, 44 N. D. 430 at pp. 435 et seq. and cases cited, 176 N. W. 131; State ex rel. Miller v. Leach, 33 N. D. 513, 157 N. W. 492; Burk-Waggoner Oil Asso. v. Hopkins (D. C.) 296 Fed. 492. See also note to People v. Pitcher, Ann. Cas. 1918D, 1185.

From what we have heretofore said, it is plain that this case may well be disposed of on other than constitutional grounds. We think that such other disposition should be made of it. As was said by Judge Cooley in his work on Constitutional Limitations:

"Neither will a court as a general rule pass upon a constitutional question and decide a statute to be invalid unless a decision upon that

very point becomes necessary to the determination of the question. "While courts cannot shun the discussion of constitutional questions when fairly presented, they will not go out of their way to find such topics. They will not seek to draw in such weighty matters collaterally nor on trivial occasions. It is both more proper and more respectful to a co-ordinate department to discuss constitutional questions only when that is the very *lis mota*. Thus presented and determined, the decision carries a weight with it to which no extra-judicial disquisition is entitled." In any case, therefore, where a constitutional question is raised, though it may be legitimately presented by the record, yet if the record also presents some other and clear ground upon which the court may rest its judgment, and therefore, render the constitutional question immaterial to the case, that course will be adopted, and the question of constitutional power will be left for a consideration until a case arises which cannot be disposed of without considering it, and when consequently a decision upon such question will be unavoidable." Cooley, Const. Lim. 7th ed. p. 231."

This language is wholly pertinent in this case.

The order of the district court sustaining the demurrer to the complaint should be and is affirmed.

JOHNSON, J., and McKENNA and PUGH, Dist. JJ., concur.

BRONSON, Ch. J. (dissenting). Upon this appeal serious considerations are involved concerning the constitutionality of chap. 69, Laws 1919; particularly that portion thereof appropriating out of the State Bar Fund $10,000.00 for purposes that have heretofore been considered subject matter of disbursement out of the general funds. Of this, every member of this court, participating as such in the consideration of this appeal, is cognizant. There are at least serious questions presented concerning the validity of the act with respect to the appropriation of $10,000.00 out of such fund in view of §§ 61 and 62 of the Constitution. Pursuant to this act, authority has been granted to expend $10,000.00, so appropriated out of this State Bar Fund, under the direction of this court, for the purchase and repair of books in the State Law Library. Manifestly, state officials whose duties concern the disbursement of public monies, as well as this court, are vitally in-

terested in the validity of this law. If the law be constitutional this court, for evident reasons, should so declare. Otherwise, this court is faced with the necessity of construing, off the record, the constitutional right to disburse the funds appropriated which now it ought to determine upon an issue with a record.

The majority opinion dismisses this action upon the highly technical ground that plaintiffs have not any right to maintain the suit. It must be noted that this is an action which seeks to enjoin state officials from carrying out or enforcing a statute alleged to be unconstitutional. The State Bar Board, who are state officers (concerned with the imposition and collection of a state regulatory tax as the majority opinion has found) and concerned with the admission and disciplining of attorneys who are officers of the court, seek to restrain other state officers. In this court the respondent state officers raise no question of the right of such Bar Board to maintain this action. The trial court determined the issue upon the merits, namely, that the act was constitutional. In my opinion, under the circumstances, the determination thus made by the majority opinion serves to bring the administration of justice into disrepute and, further, upon the record, is unwarranted.

Upon this record, with no objection being voiced in this court concerning the title of the action or the rights of the Bar Board to maintain the action, this action may be treated, as it is in its essence, as an action brought by the State on the relation of the Bar Board to enjoin other State officials concerning an act alleged to be unconstitutional. Manifestly, the attorney general, as relator, could have maintained such an action. Manifestly, a private relator, as a citizen, tax payer, or a person interested could have likewise maintained such action upon a showing that the attorney general would appear or had appeared for the defendant state officials. In this case the defendants are represented by the attorney general. This court, in the exercise of its original jurisdiction, has witnessed many cases where similar action has been recognized on the part of a relator, either private or holding official position. Thus, State ex rel. Bauer v. Nestos, 48 N. D. 894, 187 N. W. 233, 619, to restrain the Industrial Commission from carrying out a certain contract; State ex rel. Rusk v. Budge, 14 N. D. 532, 105 N. W. 724; from carrying out a law alleged to be unconstitutional and so held; State ex rel. Farmers State Bank v. Wallace, 48 N. D. 803,

187 N. W. 728; to restrain the tax commissioner from collecting certain taxes under a law claimed to be unconstitutional; State ex rel. Linde v. Taylor, 33 N. D. 76, L.R.A.1918B, 156, 156 N. W. 561, Ann. Cas. 1918A, 583; action by a representative of a bonding company to restrain state officials from enforcing or putting into effect the State Bonding Law; other similar cases might be cited. This action in its essence is an action by the State; it involves the vindication of law; it involves sovereign rights; it is a case of strictly public concern involving state franchises and state privileges; as such, the state is the real party; the relator a mere incident. State ex rel. Remington v. Aandahl, 47 N. D. 179, 181 N. W. 596; State ex rel. Linde v. Taylor, 33 N. D. 76, 83, L.R.A.1918B, 156, 156 N. W. 561, Ann. Cas. 1918A, 583. The relator brings the public injury to the attention of the court. It, by virtue of its constitutional power, commands that the suit be brought by and for the state; the private relator may have a private interest which may be distinguished, if it be severable, from the public interest, yet, the state proceeds to vindicate the public right; see State ex rel. Remington v. Aandahl, supra. But, it may be urged that such cases relate to the exercise of original jurisdiction by this court and hence have no application. The reply may be made that the original jurisdiction of this court is not any more comprehensive under constitution or statute than the original jurisdiction of the trial court. This court's original jurisdiction may be invoked only in a certain class of cases where cases are publici juris and only as a matter of grace. The trial court's jurisdiction may be invoked as a matter of right. A cause of action here is a cause of action there. In fact this court may refuse to exercise its original jurisdiction upon a cause of action for the reason that adequate relief may be secured in the trial court. State ex rel. Madderson v. Nohle, 16 N. D. 168, 125 Am. St. Rep. 628, 112 N. W. 141.

Predicated upon such principles the question is now presented of the right of the State Bar Board to present the issues involved as relators.

In 1919 the legislature provided for a State Bar Board and imposed upon the members constituting such Bar Board certain duties and obligations. It established a fund known as the State Bar Fund composed of license fees required to be paid by all practicing attorneys in the

state and set the same aside in an appropriate fund, out of which only could be disbursed expenditures made by the State Bar Board. Laws 1919, chap. 69. In 1921 a Bar Association, composed of all practicing attorneys who had paid their license fees, was created by legislative act as a corporation and, to it, the legislative act granted out of the State Bar Fund a sum of money not exceeding $3.00 per member for purposes of expenses in connection with such Bar Association. Laws 1921, chap. 25. This act was amended in 1923 by increasing the amount to $5.00 per member. Laws 1923, chap. 133.

The original act creating the Bar Board provided for the appointment of members thereof by the Governor and their due qualification as members of the Board by taking an oath and furnishing a bond. Under the act duties were imposed upon this Board to examine applicants for admission to the Bar; to issue annual licenses to practicing attorneys; to investigate charges of misconduct against attorneys, when so directed by this court, and to make report thereupon concerning their conclusions and recommendations. In the performance of their duties this Bar Board were granted the authority to employ such assistance, purchase such supplies and incur such expense as may be necessary to carry on their work, subject to the provision, however, that their expenditures must remain within the sums derived from fees paid to said State Bar Fund. It is a matter of common knowledge, which this court judicially knows, that fees paid by applicants for admission to the Bar are placed in, and become a part of, this State Bar Fund. Thus, it may be seen that the State Bar Fund is constituted from fees paid to the State Bar Board; that these fees result in the performance of duties and obligations imposed upon the State Bar Board; that the State Bar Board have authority to create expenditures and to secure payment thereof only to the extent that there are and remain sufficient funds for payment in the fund; that, pursuant to the duties imposed upon the board, the fund may be subjected to expenditures for investigation concerning charges made against attorneys which may subject the fund to greater or lesser disbursement in accordance with the number of charges that may be made or directions that the Supreme Court may make to the board concerning such investigations.

In my opinion, the State Bar Board, as such, stand in a much better position than a mere taxpayer who, as a party, might have maintained

this action. They are State officers concerned with duties, obligations and rights in the creation, maintenance, and disbursement of the State Bar Board which they have created through the exercise of their duties and powers pursuant to the law. A mere taxpayer on the other hand is in fact benefited by the disbursement through the appropriation challenged, for the reason that it necessitates that much less to be expended out of general funds to be raised by general taxation. In the instant case, if the State Bar Board are not proper parties to initiate this action, who might be proper parties? Apparently, the lawyers, or any of them, could not be, because, as the majority opinion concludes, they have voluntarily paid their dues. If thus it be, because they, or any one of them, did not register a protest except off the record, then, it may possibly be asserted that they, or any one of them, had little idea that their money, thus freely given, would be used for purposes different than the purpose for which it was contributed.

In view of the decision made by the majority opinion, it is needless in my opinion, to enter into a discussion concerning the constitutional questions presented by parties upon this appeal. With due respect to the opinions of my associates I must respectfully protest against the technical determination made in this action.

Justices BIRDZELL and CHRISTIANSON, being disqualified, did not participate, Honorable GEO. M. McKENNA, Judge of Third Judicial District, and Honorable THOS. H. PUGH, Judge of Sixth Judicial District, sitting in their stead.